UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

GREGORY D. CROSBY,  :

    Petitioner  :

    v.  :  CIVIL ACTION NO. 3:16-1861

Warden, BRENT CHAMBER  :  (Judge Mannion)

    Respondent  :

**FILED**
**SCRANTON**
APR 0 5 2018

Per_____ /s/
DEPUTY CLERK

## **MEMORANDUM**

Gregory Crosby, an inmate confined in the United States Maximum Penitentiary, Florence, Colorado[1], filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges Incident Report No. 2611139, charging him with Assaulting Any Person, a code 224 violation and Refusing to Obey an Order of Any Staff Member, a code 307 violation. (Doc. 6-1 at 18, Incident Report). Specifically, Crosby claims that his due process was violated because video surveillance was not reviewed by the Disciplinary Hearing Officer ("DHO"). (Doc. 2, Memorandum). Additionally, he states that an amended report claimed he

---

[1] At the time of the underlying incident, the petitioner was housed at the United States Penitentiary, Lewisburg, PA., within the Middle District of Pennsylvania.

only assaulted the inmate and not the officer. Id. Finally, he argues that several statements were made as to excessive force and staff misconduct. Id.

The petition is ripe for disposition and, for the reasons that follow, will be denied.

I. **Background**

On July 30, 2014 at approximately 9:15 a.m., Lieutenant J. Leonowicz delivered Incident Report No. 2611139 to Crosby. (Doc. 6-1 at 18, Incident Report). The incident report reads as follows:

> On the above date and time this officer was conducting showers in D-Block on the second floor, while at cell 209 this officer applied hand restraints to inmate CROSBY 05825-045 so that inmate BROWN 04572-095 could return to cell 209, while attempting to place inmate BROWN back into cell 209, this officer gave a verbal order to inmate CROSBY to turn towards the rear of the cell so that this officer could open the door. Once the door was open inmate CROSBY refused all orders and turned towards staff in an aggressive manner becoming agitated about inmate BROWN returning to cell 209. While inmate BROWN was entering cell 209 inmate CROSBY assaulted inmate BROWN by head butting him in the face knocking inmate BROWN to the floor. At that time inmate CROSBY stepped towards this officer in an aggressive manner assaulting me in the chest with his head and shoulder. At that time this officer maintained control of inmate CROSBY and place him to the floor with least amount of force necessary. This officer maintained control of inmate CROSBY's upper appendage until enough responding staff arrived. This officer is reporting no loss of equipment or any injuries at this time.

Id. The incident report was suspended on July 30, 2014, due to it being referred to the FBI for possible prosecution. (Doc. 6-1 at 20 Incident Report).

On August 18, 2014, the FBI declined prosecution and released the incident report back to the BOP. Id. Once the incident report was released by the FBI, it was again delivered to Crosby on August 18, 2014 at 12:12 p.m. (Doc. 6-1 at 18, Incident Report).

On August 19, 2014, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 6-1 at 19, Committee Action). The UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending "appropriate sanctions not available to the UDC." Id. During the UDC hearing, staff member, R. Marr, informed Crosby of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 22, Inmate Rights at Discipline Hearing). Petitioner, however, refused to sign the form. Id.

Also on August 19, 2014, Crosby was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 21). Crosby did not request any witnesses, but requested a staff representative to be chose by the Warden. Id. He also refused to sign this form. Id.

On August 26, 2014, Petitioner executed a Waiver of appearance,

declining to appear for a hearing before DHO, B. Chambers. (Doc. 6-1 at 28, Waiver of Appearance. Although Staff Representative, Mr. Tharp, was appointed to represent Crosby, after becoming aware that Crosby declined to appear in person, the DHO contacted Mr. Tharp and informed him that he need not report for the hearing. (Id. at 24-27, DHO Report). Mr. Tharp then appeared, via telephone, on behalf of Crosby. Id. Mr. Tharp indicated that Crosby was "pleading not guilty" to the charges and had prepared a handwritten statement. Id. This handwritten statement is summarized as follows:

> Crosby states he is declining to appear and requests his staff representative to "proceed at the hearing." Crosby states "when returning his cellmate (Brown, #04572-095) back to the cell, I (Crosby) advised Officer J. Ritz (the reporting officer) not to bring him (Brown, #40572-095) back in there (cell D-209)." Crosby further states "when the officers arrived at the cell they attempted to place cellmate Brown in the cell. At that time they open the door. I pushed inmate Brown (#04572-095) back. Then Officer J. Ritz immediately used force and took me to the floor." The remainder of Crosby's statement is dedicated to documenting various allegations of his alleged physical abuse by staff following "being taken to the floor" by the reporting officer. These allegations are not documented in this section of this report, as they are in no way material to determining whether Crosby committed the prohibited act charged in this case. Inmate Crosby makes not complaints of procedural issues related to this hearing in his handwritten statement.

Id.

4

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: (1) Memoranda of Hardy, Beaver and Kepner, dated 7-30-2014; (2) Bureau of Prisons Health Services Clinical Encounter Forms, dated 7-30-2014, prepared with regard to inmate Brown, #04572-095, and Crosby, #05825-045; (3) Staff Injury Assessment and Follow-up Form, dated 7-30-2014, prepared with regard to the reporting officer following the incident; (4) photograph of inmate Crosby, taken following the incident; and (5) handwritten statement of CROSBY, Gregory, #05825-045, submitted in his defense. (Id. at 25). The specific evidence relied on to support the findings was as follows:

> The DHO finds that inmate Crosby committed the prohibited act of Assault, Code 224. This finding is based on the eyewitness written account of the reporting officer, which indicates on 07-30-2014 at approximately 7:29 a.m., the reporting officer was conducting showers in D-Block on the second floor. While at cell 209, the reporting officer applied hand restraints to inmate CROSBY, Gregory, #05825-045, so that inmate BROWN, Leon, #4572-095, could return to cell 209. While attempting to place inmate Brown back into cell 209, the reporting officer gave a verbal order to inmate Crosby to turn toward the rear of the cell so that the reporting officer could open the door. Once the door was open, inmate Crosby refused all orders and turned toward staff in an aggressive manner, becoming agitated about inmate Brown returning to cell 209. While inmate Brown was entering cell 20, inmate Crosby assaulted inmate Brown by head-butting Brown on the face, knocking Brown to the floor. At that time, inmate Crosby stepped toward the reporting officer in an aggressive manner, assaulting the reporting officer on the chest with his head and

5

shoulder. At that time, the reporting officer maintained control of inmate Crosby and placed him on the floor with the least amount of force necessary. The reporting officer maintained control of inmate Crosby's upper appendage until enough responding staff arrived. The reporting officer reported no loss of equipment and no injuries at this time.

Id. After detailing the contents of memoranda submitted by the officers who were involved, and Plaintiff's handwritten statement, the DHO gave the greater weight of the evidence in this case to the eyewitness written account of the reporting officer, the memoranda of Hardy, Beaver and Kepner, dated 7-30-2014, and the handwritten statement of inmate Crosby, submitted in his defense, in which he stated "when the officers arrived at the cell they attempted to place inmate Brown in the cell. At that time they open the door. I pushed inmate Brown (04572-095) back." Id.

> The DHO further concluded:
>
> The DHO has considered as evidence in this case the handwritten statement of inmate Crosby, in which he denied committing any prohibited act in this case stating, simply he is "pleading not guilty" to the charges in this case. The DHO gives lesser weight to this evidence than that to which the greater weight is given in this case, for the following reasons. First, Crosby readily admitted to "pushing Brown back" during the incident, which alone satisfied the offense elements for the prohibited act of Assault. Further, the DHO has concluded this admission on the part of Crosby lends credibility to the eyewitness written account of the reporting officer, and the memoranda of Hardy, Beaver, and Kepner, dated 7-30-2014, while detracting from the credibility of Crosby's statement that he committed no

prohibited act in this case. Moreover, Crosby failed to provide any further explanation regarding the incident, other than to simply "plead not guilty". Finally, the incident in this case was witnessed by a total of four different staff members, all of whom report observing Crosby striking inmate Brown on the face with his (Crosby's) head, knocking Brown to the floor, and subsequently striking the reporting officer on the chest with his head and shoulder, further detracting from the credibility of Crosby's statement that he committed no prohibited act in this case.

The greater weight of the evidence in this case, therefore, supports the finding inmate Crosby committed the prohibited act of Assault, Code 224.

The DHO noted Crosby requested "video surveillance of range 2" as "evidence" in this case to support his allegations that "officers assaulted him after the immediate use of force". The DHO declined to obtain or review this video footage as, based on Crosby's stated purpose for requesting the video footage, it is not evidence in any way material to determining whether Crosby committed the prohibited act charged in this case.

Id.

The DHO sanctioned Crosby to sixty (60) days disciplinary segregation; loss of twenty seven (27) days Good Conduct Time; property impounded for 120 days; 60 day loss of mattress; and eight (8) months loss of telephone, commissary and visiting privileges. The DHO documented his reasons for the sanctions given as follows:

Assaulting others in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having

7

an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time imposed to demonstrate that engaging in misconduct will prolong inmate Crosby's period of incarceration. Loss of commissary, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Loss of each of these privileges for a protracted period of time is warranted, based on the repetitive nature of the prohibited act committed. Finally, impound personal property and loss of mattress are imposed as sanction, as all other sanctions previously imposed have had no deterrent effect with regard to inmate Crosby's repetitive commission of a variety of prohibited acts.

Id. Crosby was advised of his appeal rights at the conclusion of the hearing.

Id.

## II. Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions

did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set

forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Crosby was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the

11

hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Crosby elected to have an appointed staff representative and Mr. Tharp was appointed.

Although Petitioner was afforded an opportunity to be present and make a statement at his hearing, he chose to waive his appearance at the hearing. He was, however, afforded an opportunity to submit a written statement, which was documented in the DHO's report. He then received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision, and was notified of his right to appeal.

Since Crosby was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent Crosby alleges there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889

F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not be subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals the existence of documentary

evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the written statement provided by Petitioner, the DHO also considered the investigative report and staff memoranda submitted. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

To the extent that Petitioner contends that an "amended report" claimed that he only assaulted the inmate and not the officer, the record is devoid of any evidence of Petitioner's unsupported allegation. The Court does note, however, that there are two different dates of delivery on the Incident Report. The first is July 30, 2014, the date of the incident itself, and the second is August 18, 2014, the date the Incident Report was released from the FBI. However, the substance of the Incident Report remains the same. As such, the Court finds no merit to Petitioner's claim that an amended Incident Report was issued. Likewise, Petitioner's allegations of excessive force and staff misconduct, are equally without merit, as such allegations do not present a challenge to the fact or duration of Petitioner's confinement and are not cognizable in the instant habeas corpus proceeding. See Leamer v. Fauver,

288 F.3d 532, 542 (3d Cir. 2002); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243 (3d Cir. 2005).

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of two 200-level, high severity level prohibited acts. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 6 months)
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job
- J. Impound inmate's personal property.
- K. Confiscate contraband.
- L. Restrict to quarters.
- M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. §2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a §2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir. 2000)(en banc) (certificate of appealability not required to appeal from denial of §2241 petition), *abrogated on other grounds by* Gonzalez v. Thaler, 565 U.S. 134, 142 (2012); Kornegay v. Ebbert, 502 Fed.Appx. 131, 133 (3d Cir. 2012). Thus, the Court need not address this issue in the current action.

## IV. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

s/ *Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

**Dated: April 5, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1861-01.wpd